# EXHIBIT A

**Complete State Court Pleadings**

# EXHIBIT A

48012518;1

Electronically Filed
12/6/2021 6:40 PM
Steven D. Grierson
CLERK OF THE COURT

1  **COMPB**
MARK E. FERRARIO, ESQ.
2  Nevada Bar No. 1625
CHRISTOPHER R. MILTENBERGER, ESQ.
3  Nevada Bar No. 10153
GREENBERG TRAURIG, LLP
4  10845 Griffith Peak Drive, Suite 600
Las Vegas, NV  89135
5  Telephone:  (702) 792-3773
Facsimile:   (702) 792-9002
6  E-mail:  ferrariom@gtlaw.com
           miltenbergerc@gtlaw.com
7
*Counsel for Plaintiff Live Ventures Incorporated*
8

CASE NO: A-21-845047-B
Department 27

9                           **DISTRICT COURT**

10                   **CLARK COUNTY, NEVADA**

11  LIVE VENTURES INCORPORATED, a           Case No.:
    Nevada corporation,                     Dept. No.:
12
                        Plaintiff,          **COMPLAINT**
13  vs.

14  GEMSPRING CAPITAL MANAGEMENT,           <u>Exempt from Arbitration:</u>
    LLC, a Delaware limited liability company;   Amount In Controversy Exceeds $50,000
15  DOES I through X; and ROE ENTITIES I
    through X, inclusive,                    Business Court Requested
16                                           Pursuant to EDCR 1.61(a)(2)
                        Defendants.
17

18          COMES NOW Live Ventures Incorporated ("Live Ventures"), by and through its counsel,

19  the law firm of Greenberg Traurig, LLP, and for its claims for relief against Defendant

20  GEMSPRING CAPITAL MANAGEMENT, LLC ("Gemspring"), and hereby alleges and

21  complains as follows:

22                           **THE PARTIES**

23          1.      Plaintiff Live Ventures is a corporation formed and existing under the laws of the

24  State of Nevada with its principal place of business in Las Vegas, Nevada.

25          2.      Upon information and belief, Defendant Gemspring is a limited liability formed

26  and existing under the laws of the State of Delaware with its principal place of business in

27  Westport, Connecticut.

28

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

3. DOES I through X and ROE ENTITIES I through X, inclusive, are individuals or business entities who participated in the acts detailed below, and are responsible and liable to Live Ventures for their actions, which include, but are not limited to, aiding and abetting the breach of various contracts with Ventures and otherwise aiding and abetting Gemspring's misrepresentations and breaching of duties owed by Gemspring to Live Ventures. The true names and capacities of those parties sued as DOES I through X and ROE ENTITIES I through X, inclusive, are presently unknown to Live Ventures, who therefore sues said parties by such fictitious names. When the true names and capacities of such parties become known, Live Ventures will seek leave of Court to amend this Complaint to replace one or more "Doe" and/or "Roe Entity" parties with the true name, identity and capacity of each additional party to this action, together with the proper charges and allegations, and to authorize service of process on such additional parties.

## VENUE AND JURISDICTION

4. This Court has jurisdiction over Gemspring as it has established sufficient minimum contacts with the State of Nevada by engaging in and transacting business in the State of Nevada and soliciting business from individuals and companies located in the State of Nevada.

5. Gemspring has also subjected itself to the jurisdiction of the courts of the State of Nevada by engaging in transactions and entering into agreements with Live Ventures, a Nevada corporation with its principal place of business in Las Vegas, Nevada.

6. In engaging in the conduct giving rise to the claims set forth herein, Gemspring reached out to Live Ventures in the State of Nevada in order to negotiate and evaluate a potential transaction with a Nevada business. In doing so Gemspring engaged in telephone and videoconferences and otherwise communicated with Live Ventures representatives in the State of Nevada. In performing its diligence and obligations under the agreements giving rise to the claims set forth herein, Gemspring accessed information maintained by Live Ventures at its corporate headquarters in Las Vegas, Nevada.

7. Venue is proper in this Court pursuant to NRS 13.010(1) as the obligations imposed by the agreements underlying these claims were to be performed in Clark County, Nevada.

8. Venue is likewise proper in this Court pursuant to NRS 13.040.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

# GENERAL ALLEGATIONS

### A. *Gemspring Pursues a Loan Transaction with Live Ventures.*

9.      Live Ventures is a publicly traded, diversified holding company with its headquarters in Las Vegas, Nevada. Live Ventures pursues strategic acquisitions of middle market growth companies and invests in the companies its acquires to strengthen their businesses and create new jobs.

10.     Gemspring holds itself out as a Connecticut-based investment firm with more than $1.1 billion of capital under its management with the ability to close on complex lending transactions in an efficient and transparent manner.

11.     In 2020, Live Ventures sought a loan to allow it to pursue its business endeavors and potential acquisitions. In order to find a suitable transaction partner, Live Ventures retained David Schacter ("Schacter") of Reedland Capital Partners as its investment banker.

12.     Schacter identified Gemspring as a potential deal partner who might be interested in funding the loan and credit facility sought by Live Ventures. Schacter provided some preliminary information regarding what Live Ventures was seeking in order to gauge Gemspring's interest.  Schacter also had preliminary conversations with representatives of Gemspring including Dan Andrews ("Andrews"), Gemspring's Principal, Corporate Opportunities, and Brad Liff ("Liff"), Gemspring's Managing Director, Corporate Opportunities, to further explain to them as to the type of transaction Live Ventures was interested in pursuing. Liff represented to Schacter in the initial stages and to Live Ventures' other representatives, including its Chief Executive Officer Jon Isaac ("Isaac"), throughout the diligence process that he was the "decision maker" at Gemspring when it came to approving and greenlighting transactions such as the one sought by Live Ventures and that Liff was essentially a one-man Investment Committee for Gemspring or that he otherwise controlled the decisions of the Investment Committee.

13.     Gemspring considered the information provided by Schacter and conducted preliminary diligence of its own to evaluate its interest in the transaction. Thereafter, Liff and Andrews informed Live Ventures that Gemspring decided that it wanted to pursue a transaction with Live Ventures and proposed committing to providing a $25 million senior secured term loan

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

1    and access to an additional, uncommitted delayed draw term loan to Live Ventures as part of the

2    deal (the "Transaction").

3        14.    On November 2, 2020, Liff, on behalf of Gemspring, contacted Schacter, on behalf

4    of Live Ventures, to discuss Gemspring's proposed terms to consummate the Transaction. Liff

5    represented to Schacter that Gemspring's debt group, controlled and directed by Liff, had reviewed

6    the proposed terms of the loan package and Live Ventures' recent public filings and that

7    Gemspring was eager to close the Transaction. Liff further represented to Schacter that all of the

8    pre-closing due diligence on the Transaction would be merely "confirmatory" of what Gemspring

9    had already investigated and that it would be able to move forward with the Transaction and

10   hopefully close by year-end.  Liff asked Schacter to pass along the information to Isaac and other

11   appropriate representatives of Live Ventures and provided Schacter with an initial draft of the

12   proposed term sheet for the Transaction to also present to Live Ventures.

13       15.    In the following weeks, the parties continued to discuss the proposed terms and

14   Gemspring's intention to move forward with the Transaction and to close on the Transaction in an

15   quick and efficient manner.  As the parties negotiated a term sheet in November 2020, Gemspring's

16   representatives, including Andrews and Liff, represented to Live Ventures' representatives,

17   including Isaac and Schacter, that Gemspring was uniquely suited to pursue the Transaction, that

18   it was capable of closing on the proposed Transaction, and that Gemspring could close the

19   Transaction in a short time frame, among other representations. Liff repeatedly informed Isaac and

20   Schacter that the diligence should proceed quickly as it would be confirmatory of what Gemspring

21   had previously reviewed and concluded on its own and that Liff would be the ultimate decision

22   maker in closing on the Transaction.

23       16.    On November 24, 2020, Liff sent Schacter a letter outlining Gemspring's proposed

24   terms for the Transaction with Live Ventures and attached a copy of the term sheet that the parties

25   had been negotiating and finalizing since November 2, 2020.

26       17.    In the cover letter, Liff expressed enthusiasm regarding the Transaction as both he

27   and Andrews had done while negotiating the terms of the term sheet in November 2020 and

28   represented that Gemspring was "excited to support Live Ventures as it accelerates growth and

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

1    pursues additional accretive acquisitions."

2          18.    Liff again touted in Gemspring's November 24, 2020 letter the purported benefits

3    to Live Ventures in pursuing the Transaction with Gemspring. Specifically, Liff explained in the

4    letter, similar to what he and Gemspring's other representatives had done during negotiations, that

5    Gemspring's boutique nature would allow for a more personal touch with a better outcome than a

6    traditional lender.  As Liff claimed in his letter, Gemspring is "a small entrepreneurial team without

7    bureaucracy, politics, or a large investment committee, which leads to transparency and efficiency

8    during the transaction process and post-closing."

9          19.    Liff directly targeted Live Ventures in his letter claiming that "[w]e think

10   Gemspring is an ideal transaction partner for Live Ventures, and we are well suited to consummate

11   the Transaction with speed and a high degree of certainty for all stakeholders.  We look forward

12   to the opportunity to partner with management to build upon Live Ventures' success."

13         20.    In laying out the terms of the proposed Transaction, Liff explained in the November

14   24, 2020 letter that while final approval of the Transaction would be required by Gemspring's

15   Investment Committee, Gemspring was "prepared to conduct a streamlined confirmatory due

16   diligence process" and that Gemspring would "commit to work on an expedited basis to efficiently

17   complete the Transaction on a timeline consistent with" the parties' prior discussions.  As lift

18   represented himself to be the ultimate decision maker on behalf of Gemspring and its Investment

19   Committee, since he claimed he constituted and controlled the Investment Committee, Live

20   Ventures was led to believe that the Transaction would close without issue.

21         21.    In order to move forward with the Transaction, Gemspring required Live Ventures

22   to commit to a certain exclusivity period preventing Live Ventures from seeking alternative lenders

23   while Gemspring worked to close the Transaction.

24         22.    The November 24, 2020 letter attached additional terms relating to the proposed

25   Transaction that the parties had negotiated over the prior three weeks and Liff requested that Live

26   Ventures sign and return the letter to indicate its agreement to move froward with the Transaction.

27   Isaac executed the letter the same day and returned it to Gemspring (the "Letter Agreement").

28

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

23.     Among other terms set forth in the Letter Agreement, Liff, on behalf of Gemspring, advised Live Ventures that it would potentially seek reimbursement for expenses incurred in connection with the Transaction, but that "such expenses will not exceed $200,000 without prior notice to" Live Ventures. As further detailed in the attached "Indicative Term Sheet," the parties contemplated that Live Ventures would be responsible for "[r]easonable out-of-pocket expenses (including legal fees) to be paid regardless of whether closing occurs, not to exceed $200,000 without prior notice to [Live Ventures].  Gemspring agrees to provide [Live Ventures] with estimates of all material expenses prior to incurring such expenses on behalf of [Live Ventures]."

24.     Based on the parties' understanding of the desire for an efficient and transparent diligence process and Liff and Andrews' representations that the diligence to be conducted would be confirmatory, Live Ventures agreed to move forward with the Transaction and countersigned the Letter Agreement.

### B.   Gemspring Seeks to Modify the Terms of the Transaction.

25.     In the weeks that followed, Gemspring's representatives proceeded with conducting diligence relating to the Transaction, a process that was supposed to be steam-lined and confirmatory in nature.

26.     In reliance of the promises and representations made in the negotiations of the Letter Agreement by Gemspring representatives, including Liff, Live Ventures engaged in the diligence process with Gemspring, retained its own transactional counsel, DLA Piper, and provided Gemspring with unfettered access to the company's books and records requested during the diligence process.  Live Ventures also provided Gemspring with access to its counsel and other professional advisors to conduct additional diligence in anticipation of closing on the Transaction.

27.     During this time, Gemspring's representatives and professionals, including Andrews and Liff and Gemspring's attorneys and financial advisors, held telephone and videoconferences on behalf of Gemspring with Live Ventures representatives and professionals, many of which were located in Nevada.

28.     Gemspring's representatives and professionals were also provided with access to Live Ventures' books and records, many of which were also located in Nevada, in connection with

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

its diligence.

29.     At no time during the diligence process did Gemspring or any of its representatives indicate to Live Ventures that there was any concern with the Transaction or that Gemspring had received any feedback from its Investment Committee that were red flags such that the Transaction would not be consummated.

30.     Instead, throughout December 2020, Gemspring's representatives, including Liff, continued to represent to Live Ventures' representatives such as Isaac and Schacter than the diligence was proceeding well, that preliminary analyses were coming back even better than expected, and that Gemspring anticipated closing on the Transaction as originally contemplated by the parties. Given Liff's position with the committee, Live Ventures understood that the Transaction was on track to close as anticipated by the parties.

31.     Later in December 2020, Liff contacted Live Ventures' representatives, including Isaac and Schacter and represented that Gemspring desired to enter into a supplemental agreement relating to the reimbursement of Gemspring's diligence costs relating to the Transaction.

32.     Although Gemspring had originally represented to Live Ventures that it anticipated its Transactional Expenses to be approximately $200,000 and despite inducing Live Ventures to pursue the Transaction with Gemspring based, at least in part, on Gemspring's purported transparency and efficiency in closing on these types of credit transactions, Gemspring changed course and now asserted that their costs were projected to be significantly higher.  Rather than the $200,000 that Gemspring had groomed Live Ventures to anticipate, Gemspring claimed, less than one month into the process, that its estimated out-of-pocket costs had somehow now ballooned to $950,000.

33.     These drastically higher estimates were a surprise to Live Ventures given Gemspring's prior representations and the nature of the diligence Gemspring had claimed it intended to complete relating to the Transaction. In order to keep the costs and fees in check, Live Ventures and its representatives insisted on imposing limitations on Gemspring's Transaction Expenses.  Gemspring was agreeable to the request and its representatives, including Liff and Andrews, continued to represent to Live Ventures around this time that the Transaction was

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

proceeding well and that the company expected to close on the Transaction as scheduled.

34.    Accordingly, Gemspring prepared a new document it entitled "Expense Reimbursement Letter" to modify certain terms of the original Letter Agreement and presented it to Live Ventures on December 22, 2020 (hereinafter, the "Reimbursement Agreement" and together with the Letter Agreement, the "Agreements").

35.    The Reimbursement Agreement continued to lock up Live Ventures in an exclusivity period with Gemspring that ran for a one-year period from the date of the agreement.

36.    The Reimbursement Agreement also set forth the parties' obligations and responsibilities with respect to certain Transaction Expenses.

37.    Specifically, the Reimbursement Agreement provided that Live Ventures would "agree to reimburse Gemspring for all reasonable and documented out-of-pocket costs and expenses (the "*Transaction Expenses*") (limited in the case of legal fees and exhibits (the "*Legal Expenses*"), to the reasonable and documented fees, charges and disbursements of Weil, Gotshal & Manges LLP and of one local counsel in each relevant local jurisdiction), in each case, regardless of whether the Closing Date occurs."

38.    The Reimbursement Agreement estimated that the costs for Gemspring's financial advisors to conduct its quality of earnings ("QoE") diligence on behalf of Gemspring were $300,000, while Gemspring's estimated Legal Expenses were anticipated to be $650,000.

39.    With respect to the QoE diligence, Gemspring agreed in the Reimbursement Agreement that it would oversee such work in an effort to keep such costs down and "cause its financial advisors to, leverage the quality of earnings work previously completed by Moss Adams[,]" a separate financial advisor who had recently conducted similar diligence into Live Ventures. Again, Gemspring's representatives had continued to claim that the diligence they needed to perform was merely confirmatory.

40.    With respect to the Legal Expenses, Gemspring agreed to certain caps on particular types of diligence (*e.g.,* no more than $150,000 in general corporate diligence and no more than $171,000 in SEC Matter Diligence). Some of those caps were likewise broken down even further into sub-categories and were set forth in an exhibit to the Reimbursement Agreement.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

41.    Gemspring also expressly agreed in the Reimbursement Agreement that it would "not incur Legal Expenses relating to credit documentation without [Live Ventures'] prior agreement[,]" notably emphasizing this limitation in the letter Gemspring drafted and presented to Live Ventures.

42.    Moreover, Gemspring also agreed in the Reimbursement Agreement that if it determined not to pursue the Transaction, then it would promptly notify Live Ventures in writing and that it would stop incurring any additional Transaction Expenses.

43.    In negotiating the Reimbursement Agreement in mid-to-late December 2020, Gemspring and its representatives, including Liff and Andrews, represented to Live Ventures and its representatives, including Isaac and Schacter that the Transaction was proceeding as expected, that Gemspring anticipated closing, and at no time did they indicate that there were any problems discovered in diligence that were likely to impact the ability of Gemspring to close on the Transaction.

44.    As  result of these representations, including Gemspring's representations that it would only incur reasonable expenses, that Gemspring would impose caps on certain expenses, and that it would generally oversee the reasonableness of the fees incurred in maintaining an efficient transaction, Live Ventures countersigned and returned the Reimbursement Agreement.

**C. *Gemspring Fails to Oversee Its Professionals and Allows Them to Run Up Grossly Exorbitant and Unreasonable Professional Fees While Representing to Live Ventures that the Transaction Remained on Track.***

45.    Shortly after signing the Reimbursement Letter, Live Ventures wired $250,000 to Gemspring as a deposit on the Transaction Fees based on the representations and explanations provided by Gemspring concerning the costs.

46.    Gemspring and its financial and legal advisors proceeded with their diligence. From December 22, 2020, through early March 2021, Gemspring's representatives and its financial and legal advisors were in contact with Live Ventures representatives on nearly a daily basis.

*ACTIVE 61641608v2*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

47.    Live Ventures continued to make its representatives and records located in Las Vegas and elsewhere available to Gemspring and its advisors throughout the process whenever requested.

48.    Gemspring's representatives, including Andrews, represented to Isaac that they would only proceed with documenting certain legal issues that Gemspring considered to be the "low hanging fruit" to help minimize the legal costs and keep legal spend down while QoE and other diligence continued and was completed.

49.    In or around January 2021, Live Ventures also retained Eric Althofer ("Althofer") of Capitala as its consultant to assist it in navigating the Transaction diligence and documentation and to serve as Live Ventures' agent in its discussions with Gemspring.

50.    During this period in early 2021, Gemspring's representatives, including Liff and Andrews, continued to represent to Live Ventures' representatives, including Isaac, Schacter and Althofer that the diligence was proceeding well, that their analyses were coming back "much better" than expected, and that Gemspring was on track to close the Transaction as anticipated.

51.    On February 10, 2021, Andrews advised Schacter that Gemspring's financial advisors advised that their QoE diligence costs were increasing, but still did not indicate there were any red flags or signs that the Transaction would not close.  Although the quickly increasing costs concerned Live Ventures' representatives, they were persuaded by Andrews, Liff, and other Gemspring representatives around this time not to worry as the diligence period was soon coming to a close.  None of the Gemspring representatives provided any information or made any statements to Live Ventures to give any indication that the Transaction was at risk or that Gemspring intended not to, or could not, close the Transaction as contemplated.

52.    For example, on February 17, 2021, Andrews sent an email to Isaac, Schacter, and Michael Stein ("Stein"), Live Ventures' general counsel, congratulating the Live Ventures' team on its recent stock performance and encouraging the team that everything was still on track.  As such, Andrews requested that Live Ventures make an additional $250,000 payment towards Transaction Fees, bringing the total Live Ventures had contributed to date to $500,000 even though the original anticipated expenses for the entire transaction were $200,000.  Notably, in this email

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Andrews represented that Gemspring intended to shift some of the legal diligence costs from Gemspring's primary counsel, Weil Gotshal, to "a much cheaper option" for a flat fee.

53.    Live Ventures' representatives understood this to be a sign that the Transaction was continuing to progress in a positive manner and that legal fees would be lower than originally anticipated in light of the "much cheaper option" that Gemspring had chosen to utilize.

54.    On multiple occasions around this time and through the diligence period, Gemspring's representatives, including Liff, continued to tell Live Ventures' representatives, including Isaac, Schacter, and Althofer, that the QoE diligence had come out "much better" than anticipated and that Gemspring was eager to move froward and close the Transaction.

55.    Based on the representations made by Gemspring with respect to the positive outlook of the diligence and the expectation of closing on the Transaction, Live Ventures made the additional $250,000 payment and the parties continued to proceed down the path of completing diligence in anticipation of closing the Transaction.

56.    At Gemspring's request, the parties proceeded with drafting and negotiating certain transactional documents as Gemspring's representatives continued to lead Live Ventures to believe that the Transaction would close.

57.    Gemspring's representatives encouraged Live Ventures to authorize the drafting of more and more transactional documents and to even include Live Ventures' other lenders in order to facilitate the anticipated closing of the Transaction. Reflecting Gemspring's bullish position on the Transaction, Gemspring's representatives began drafting and circulating intercreditor agreements with Live Ventures and its other lenders leading Live Ventures to believe that Gemspring was satisfied with the due diligence and that Gemspring's Investment Committee, Liff, had authorized its representatives to proceed with the final stages of closing the Transaction.

**D.    *Gemspring Modifies the Terms of the Reimbursement Agreement and Continues to Represent to Live Ventures that the Transaction Would Close.***

58.    On March 2, 2021, Andrews, on behalf of Gemspring, sent Althofer and Schacter, on behalf of Live Ventures, a breakdown of the fees and costs incurred by Gemspring through that date. At the time, Andrews represented that Gemspring had incurred a total of $989,000 in

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

Transaction Expenses. The email indicated that $505,000 of the total had been incurred in Legal Expenses, while the remaining $484,000 was attributable to the QoE diligence.

59.    Recognizing that the Transaction Expenses had risen far beyond Gemspring's initial and even revised projections, Andrews, on behalf of Gemspring, agreed that any Transaction Expenses above the $989,000 set forth in the March 2, 2021, including final legal documentation costs, would not need to be paid by Live Ventures until "the transaction closing date."

60.    Live Ventures understood this modification of the parties' Reimbursement Agreement as a sign that the Transaction was still proceeding on track as expected and that there were no red flags being raised internally at Gemspring or by its Investment Committee that would make it likely that the Transaction would not close.

61.    Andrews again confirmed Gemspring's agreement that Live Ventures would not have to pay any Transaction Expenses above and beyond $989,000 until the Transaction closed both during a phone conversation with Isaac and in an email Andrews sent to Isaac on March 10, 2021.

62.    On March 8, 2021, Schacter spoke with Andrews at Gemspring and asked for a copy of the QoE analysis. Andrews represented that it was not yet in final form and could not be circulated. Andrews also advised that he intended on taking the Transaction to Gemspring's Investment Committee for final approval on Friday, March 12, 2021.

**E.    Gemspring Pulls the Plug on the Transaction without Notice or Explanation.**

63.    On March 11, 2021, without warning, reason, or explanation, Liff, on behalf of Gemspring, sent an email to Isaac and Stein informing Live Ventures that Gemspring was backing out of the Transaction and that it would not close. Specifically, Liff wrote: "Jon and Michael – following our extensive diligence and after much deliberation, unfortunately, we have decided not to proceed with the transaction. I know this outcome will be disappointing. I am available to discuss in further detail tomorrow if either of you would like to talk. Best, Brad Sent from my iPad".

64.    Despite having led Live Ventures to believe that the transaction was on track and scheduled to close as recently as just one day prior, Gemspring failed to provide Live Ventures

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

with any explanation or rationale as to why Gemspring was backing out of the deal. Gemspring did not identify any material change from one day to the next, but simply pulled the rug out from under Live Ventures without cause. Given Liff's prior representations regarding the Transaction and his claim that he was the ultimate "decision maker" for transactions such as these, Liff's unannounced statement was a shock.

65.     On March 19, 2021, Liff sent an email to Isaac, Schacter, Althofer, and Stein alleging that Gemspring had incurred a total of $1,222,911.50 in Transaction Expenses, the balance of which were immediately due and payable by Live Ventures. The email did not explain how Gemspring and its advisors had incurred over $230,000 in additional fees in just eight days from the last update on March 2, 2021 that it had provided prior to tanking the deal.

66.     While the March 19, 2021 email attached what Liff called the "relevant invoices" for each of Gemspring's professionals, these "invoices" were little more than line items claiming that amounts were due with no description of the work performed.  They did not provide any documentation relating to what tasks were allegedly performed by each of the professionals, when those expenses were incurred, or any information concerning whether such costs and expenses had been paid by Gemspring.

67.     Regardless, the cursory invoices demonstrated that the amounts sought by Gemspring were not "reasonable" expenses as contemplated by the Reimbursement Agreement and as Gemspring had promised to control. Instead, Gemspring turned a blind eye to the Transactional Expenses piled up by its professionals without regard to its commitment to only incur "reasonable" expenses and without regard to its requirement to deal with Live Ventures in good faith under their Agreements. While Gemspring had originally projected $200,000 in expenses in order to close the Transaction, and later increased that estimate to $950,000, Gemspring apparently allowed its professionals to proceed without any limitations and unrestricted in their work without regard to reasonableness by running up Transactional Expenses nearly 30% higher than even the excessive, revised estimate without even completing and closing on the Transaction.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

68.    Further highlighting the unreasonableness of the fees and Gemspring's lack of oversight and control over its professionals and Gempsring's failure to deal with Live Ventures in good faith in connection with the Transaction, the invoice from Alvarez & Marsal, the financial advisor heading up the QoE diligence for Gemspring, simply stated "Financial Accounting Due Diligence fees   $521,752."   There was no breakdown of what work was performed, what professionals performed the work, when that work was performed, or any way for Live Ventures to determine what costs could be subject to the Reimbursement Agreement. Notably, even the revised projection for the work of Alvarez & Marsal stated in the Reimbursement Agreement was $300,000, but somehow the advisor's final invoice came in nearly 75% higher on a transaction that did not close.  Nor did the billing records provide any way to analyze whether they had utilized the existing work product in order to reduce their fees as Gemspring had promised to cause their professionals to utilize to minimize costs, further demonstrating Gemspring's breach of the parties' Agreements and its failure to deal with Live Ventures in good faith throughout the process.

69.    Similarly, the invoices from Gemspring's legal advisors were not any better and likewise demonstrate Gemspring's lack of control over its professionals and failure to deal with Live Ventures in good faith. Weil Gotshal's invoice claimed $691,659.50 in Legal Expenses with respect to a Transaction that had not closed and that would have required additional work to document had it closed as anticipated by the parties and as represented by Gemspring.  While the invoice broke the amounts claimed by Gemspring's legal advisors down into three generic categories, even the amounts set forth in each of those categories were substantially higher than the amounts attributed to each category by Gemspring in an email to Live Ventures just days earlier. Further, the invoice included a breakdown of the nearly 40 separate professionals who purportedly performed work in connection with the legal diligence, with the number of hours each spent, and the firm's hourly rates charged on the matter (ranging from $230 for "library staff" to $1,650 for senior partners). However, traditional time sheets demonstrating the work performed by each professional were not provided such that it was impossible to understand how the legal fees had gotten so far out of hand for a transaction that did not close, to determine what work was actually performed by each of the professionals, and when that work was supposedly completed

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

and billed. These invoices reflect Gemspring's lack of oversight of its professionals and utter disregard for its contractual obligations to Live Ventures and its complete failure to deal with Live Ventures in good faith throughout the diligence period.

70.     Of note, Live Ventures had also retained counsel, DLA Piper, to assist with the Transaction and to draft and negotiate documents in light of Gemspring's repeated indications that the Transaction was going to close. Live Ventures' ultimately incurred $125,000 in attorneys' fees and costs, a far cry from the nearly $700,000 incurred by Gemspring. Nevertheless, Live Ventures only incurred such costs because of Gemspring's representations that the deal was likely to close and their lack of bringing up any concerns about closing throughout the process. But for those representations, Live Ventures would not have incurred these fees.

71.     In addition to the fees and costs purportedly incurred by Gemspring not being properly documented, there was nothing provided by Gemspring to show that they actually incurred and paid these costs such that they could possibly be subject to the Reimbursement Agreement in any event. There is no indication that Gemspring paid the amounts or if it sought and obtained discounts on these amounts such that they are seeking to reap a windfall from Live Ventures for a Transaction for which they terminated in bad faith at the last minute.

72.     Despite these shortcomings, Gemspring has insisted that all of the fees, costs and expenses it presented are due and owing under the parties' Agreements. Gemspring has failed to demonstrate that such fees and costs are reimbursable or reasonable, particularly under the circumstances presented here and its bad faith conduct incurring such fees without imposing any reasonable controls and terminating the Transaction at the last minute without any justification. Nor does Gemspring recognize its own agreed upon limitation that certain, significant costs would not be recoverable by Gemspring until the Transaction closed in any event. Instead, Gemspring seeks a windful from Live Ventures after failing to deal with Live Ventures in good faith and providing false, incomplete, and otherwise misleading information to Live Ventures throughout the diligence process.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

**First Claim For Relief**

**(Breach of Contract)**

73.    Live Ventures incorporates by reference all allegations contained in the preceding paragraphs and reasserts those allegations as though fully set forth herein.

74.    Live Ventures and Gemspring are parties to valid and existing contracts, namely the Letter Agreement and the Reimbursement Agreement.

75.    Live Ventures performed all material obligations under the parties' Agreements or was otherwise excused from performance as a result of Gemspring's conduct.

76.    Gemspring breached its obligations under the Agreements by, among other things, failing to pursue the Transaction in a transparent and efficient manner, failing to exercise reasonable care in oversight of its professionals, incurring Transactional Expenses without providing reasonable estimates to Live Ventures or obtaining Live Ventures' written approval to proceed with incurring such expenses, failing to promptly cease incurring additional fees when it chose to terminate the Transaction, trying to seek expenses incurred post-March 4, 2021 without closing on the Transaction, and by seeking to recover fees that are unreasonable, undocumented and that are otherwise not recoverable as being outside the caps and limitations agreed to by the parties in their Agreements.

77.    As a direct and proximate result of the acts and omissions of Gemspring, Live Ventures has suffered and will continue to suffer direct, incidental and consequential damages in excess of $15,000.00 in an amount to be proven at trial.

78.    Gemspring's acts and omissions have also forced Live Ventures to obtain the services of counsel to litigate these issues.  As contemplated by the Reimbursement Agreement, Live Ventures is entitled to an award of attorneys' fees and costs in addition to the damages it has sustained.

**Second Claim For Relief**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

79.    Live Ventures incorporates by reference all allegations contained in the preceding paragraphs and reasserts those allegations as though fully set forth herein.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

ACTIVE 61641608v2

80.     Live Ventures and Gemspring are parties to valid and existing contracts, namely the Letter Agreement and the Reimbursement Agreement.

81.     The covenant of good faith and fair dealing is implied into every contract entered into under both New York and Nevada law, including the contracts at issue herein.

82.     Gemspring owed a duty of good faith and fair dealing to Live Ventures to refrain from avoiding the intention and sprit of those agreements, or from otherwise acting arbitrarily or unfairly under those agreements to the disadvantage of Live Ventures.

83.     Live Ventures performed all material obligations under the parties' Agreements or was otherwise excused from performance as a result of Gemspring's conduct.

84.     Gemspring breached the duty of good faith and fair dealing by performing in a manner that was unfaithful to the purpose of the contract, including, but not limited to failing to exercise reasonable care in the oversight of its financial and legal advisors to ensure that only reasonable, documented Transaction Expenses were incurred, failing to obtain internal approvals from its own Investment Committee throughout the diligence depriving Live Ventures from having the opportunity to cease pursuing the Transaction if there were concerns raised within Gemspring, failing to provide information for Live Ventures to evaluate the status of the Transaction properly throughout the diligence process, failing to inform Live Ventures of issues or concerns raised internally within Gemspring that would have shown the potential risks in continuing to pursue the Transaction and incur fees and costs, and by causing Live Ventures to believe that the diligence was merely "confirmatory" and a formality to closing on the Transaction.

85.     As a direct and proximate result of the acts and omissions of Gemspring, Live Ventures has suffered and will continue to suffer direct, incidental and consequential damages in excess of $15,000.00 in an amount to be proven at trial.

86.     Gemspring's acts and omissions have also forced Live Ventures to obtain the services of counsel to litigate these issues.  As contemplated by the Reimbursement Agreement, Live Ventures is entitled to an award of attorneys' fees and costs in addition to the damages it has sustained.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

ACTIVE 61641608v2

1

**Third Claim for Relief**

2

**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing)**

3      87.    Live Ventures incorporates by reference all allegations contained in the preceding

4    paragraphs and reasserts those allegations as though fully set forth herein.

5      88.    Live Ventures and Gemspring are parties to valid and existing agreements, namely

6    the Letter Agreement and the Reimbursement Agreement.

7      89.    The covenant of good faith and fair dealing is implied into every contract entered

8    into under both New York and Nevada law, including the contracts at issue herein.

9      90.    Gemspring owed a duty of good faith and fair dealing to Live Ventures to refrain

10   from avoiding the intention and sprit of those agreements, or from otherwise acting arbitrarily or

11   unfairly under those agreements to the disadvantage of Live Ventures.

12     91.    Live Ventures performed all material obligations under the parties' Agreements or

13   was otherwise excused from performance as a result of Gemspring's conduct.

14     92.    As a result of Gemspring's control of information and Live Ventures' dependence

15   upon Gemspring for information relating to the diligence process and the status of the Transaction

16   and its potential approval, Live Ventures was required to place Gemspring in a unique position of

17   trust and confidence creating a special and/or fiduciary relationship between them unique in nature

18   such that Gemspring was obligated and bound to act for the benefit and best interest of Live

19   Ventures with respect to the disclosure of information and transparency relating to the progress of

20   the Transaction.

21     93.    Gemspring tortiously breached the duty of good faith and fair dealing by

22   performing in a manner that was unfaithful to the purpose of the contract, including, but not limited

23   to failing to disclose information for Live Ventures to properly evaluate proceeding with the

24   Transaction including withholding information relating to Gemspring's Investment Committee's

25   review and approvals, or disapprovals, of the Transaction or other information potentially causing

26   concern that could lead to the parties not consummating the Transaction, and by providing false or

27   misleading information in a grossly negligent or willful manner upon which Live Ventures relied

28   in continuing to pursue the Transaction to its ultimate detriment.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

94.     Gemspring's actions were done in bad faith and perpetrated through gross negligence and/or willful misconduct such that it is necessary to impose liability against Gemspring in order to deter Gemspring and other similarly situated entities from engaging in such grossly negligent or morally reprehensible conduct.

95.     As a direct and proximate result of the acts and omissions of Gemspring, Live Ventures has suffered and will continue to suffer direct, incidental and consequential damages in excess of $15,000.00 in an amount to be proven at trial.

96.     In committing the acts herein above alleged, Gemspring is guilty of oppression, fraud and malice towards Live Ventures. Therefore, Live Ventures is entitled to recover punitive damages from Gemspring for the purpose of deterring him and others similarly situated from engaging in like conduct in the future.

97.     Gemspring's acts and omissions have also forced Live Ventures to obtain the services of counsel to litigate these issues.  As contemplated by the Reimbursement Agreement, Live Ventures is entitled to an award of attorneys' fees and costs in addition to the damages it has sustained.

## Fourth Claim for Relief

### (Negligent Misrepresentation)

98.     Live Ventures incorporates by reference all allegations contained in the preceding paragraphs and reasserts those allegations as though fully set forth herein.

99.     As a result of Gemspring's control of information and Live Ventures' dependence upon Gemspring for information relating to the diligence process and the status of the Transaction and its potential approval, Live Ventures was required to place Gemspring in  a unique position of trust and confidence creating a special and/or fiduciary relationship between them unique in nature such that Gemspring was obligated and bound to act for the benefit and best interest of Live Ventures with respect to the disclosure of information and transparency relating to the progress of the Transaction.

100.    Therefore, Gemspring owed Live Ventures a duty, as a result of special relationship, to give correct information to Live Ventures in the pursuit of the Transaction.

ACTIVE 61641608v2

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

101.    As set forth above, between November 4, 2020 and March 10, 2021, Gemspring, through its representatives Andrews and Liff, made false representations to Live Ventures' representatives, including to Isaac, Stein, Schachter, and Althofer, relating to the status of the Transaction, the status of Gemspring's diligence, and the anticipation of the parties that the Transaction would close as a scheduled.  Gemspring's representatives likewise made materially false representations by way of omission by failing to disclose information relating to the true status of Gemspring's diligence and the potential closing of the Transaction.

102.    Gemspring knew or should have known that the information it provided and the representations made to Live Ventures was incorrect, incomplete, false, and otherwise misleading. Gemspring was also reckless and grossly negligent in providing the incorrect, incomplete, false and otherwise misleading information to Live Ventures.

103.    Gemspring knew that the information it was providing to Live Ventures was desired by Live Ventures for a serious purpose, including to evaluate the status of the Transaction and Gemspring's diligence, and of importance in Live Ventures determination of how to proceed with the Transaction. The information was provided in the course of transaction business and in determining how Live Ventures would manage its affairs with respect to the Transaction such that true and accurate information was necessary for Gemspring to provide and for which it was reasonable for Live Ventures to anticipate full, truthful, and non-misleading disclosures from Gemspring.

104.    Gemspring knew that Live Ventures intended to rely and act upon the information it provided, including the false, incorrect, and misleading information and the omissions of material information.

105.    Live Ventures did rely on the false, incorrect, and otherwise misleading information provided to it by Gemspring in agreeing to continue to pursue the Transaction and in incurring its own attorneys' fees and costs, spending time, money and effort in engaging in the diligence process, in not directing Gemspring to cease incurring additional Transaction Expenses, and in consenting to Gemspring proceeding with incurring other Transactional Expenses.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

1    106.    Live Ventures was reasonable in its reliance on the false, incorrect, and misleading

2    information provided to it by Gemspring and it relied upon such information to its detriment.

3    107.    It was not until after Gemspring terminated the Transaction in bad faith that Live

4    Ventures knew or could have known that it was not being provided complete, accurate, truthful,

5    and non-misleading information relating to the status of the Transaction, Gemspring's diligence,

6    and the anticipated closing of the Transaction.

7    108.    As a direct and proximate result of the acts and omissions of Gemspring, Live

8    Ventures has suffered and will continue to suffer direct, incidental and consequential damages in

9    excess of $15,000.00 in an amount to be proven at trial.

10    109.    In committing the acts herein above alleged, Gemspring is guilty of oppression,

11    fraud and malice towards Live Ventures. Therefore, Live Ventures is entitled to recover punitive

12    damages from Gemspring for the purposes of deterring it and others similarly situated from

13    engaging in like conduct in the future.

14    110.    Gemspring's acts and omissions have also forced Live Ventures to obtain the

15    services of counsel to litigate these issues.  As contemplated by the Reimbursement Agreement,

16    Live Ventures is entitled to an award of attorneys' fees and costs in addition to the damages it has

17    sustained.

18    **Fifth Claim for Relief**

19    **(Declaratory Relief)**

20    111.    Live Ventures incorporates by reference all allegations contained in the preceding

21    paragraphs and reasserts those allegations as though fully set forth herein.

22    112.    Nevada Revised Statute 30.040(1) provides that "[a]ny person interested under [a

23    written contract] or whose rights, status or other legal relations are affected by a [contract] may

24    have determined any question of construction or validity arising under the [contract] and obtain a

25    declaration of rights, status or other legal relations thereunder."

26    113.    The Reimbursement Agreement contemplated that any professional fees incurred

27    by Gemspring would be reasonable and documented and limited in amount for certain categories

28    of diligence.

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

114.    Gemspring contends that any and all of the professional fees it incurred in connection with the Transaction in any manner are recoverable under the Reimbursement Agreement.

115.    Live Ventures disputes Gemspring's interpretation of the Reimbursement Agreement and contends that the fees and costs for which Gemspring seeks reimbursement are not recoverable.

116.    In light of the foregoing, Live Ventures seeks a judicial declaration as to the limitations on the fees and costs that are potentially recoverable under the Reimbursement Agreement.

117.    Thus, there is a justiciable controversy ripe for adjudication between the parties.

118.    Gemspring's acts and omissions have also forced Live Ventures to obtain the services of counsel to litigate these issues.  As contemplated by the Reimbursement Agreement, Live Ventures is entitled to an award of attorneys' fees and costs in addition to the damages it has sustained.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Live Ventures prays for judgment against Gemspring as follows:

1.    For compensatory and special damages, in an amount in excess of $15,000.00 to be determined at trial;

2.    For punitive damages, in an amount to be determined at trial;

3.    For a declaration as to the limitation of fees, costs and expenses that are potentially recoverable under the Reimbursement Agreement;

4.    For pre-judgment and post-judgment interest on the foregoing sums at the highest rate permitted by law;

/ / /

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

5.    For an award of attorney's fees and costs incurred in prosecuting this action; and,

6.    For such other and further relief as the Court may deem just and proper.

DATED this 6th day of December, 2021.

GREENBERG TRAURIG, LLP

By:/s/ Christopher R. Miltenberger
MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
CHRISTOPHER R. MILTENBERGER, ESQ.
Nevada Bar No. 10153
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135

*Counsel for Plaintiff Live Ventures Incorporated*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61641608v2*

Electronically Filed
12/6/2021 6:40 PM
Steven D. Grierson
CLERK OF THE COURT

1   **IAFD**
     MARK E. FERRARIO, ESQ.
2    Nevada Bar No. 1625
     CHRISTOPHER R. MILTENBERGER, ESQ.
3    Nevada Bar No. 10153
     GREENBERG TRAURIG, LLP
4    10845 Griffith Peak Drive, Suite 600
     Las Vegas, NV  89135
5    Telephone:  (702) 792-3773
     Facsimile:   (702) 792-9002
6    E-mail:  ferrariom@gtlaw.com
                  miltenbergerc@gtlaw.com
7
     *Counsel for Plaintiff Live Ventures Incorporated*
8

CASE NO: A-21-845047-B
Department 27

9                          **DISTRICT COURT**

10                   **CLARK COUNTY, NEVADA**

11   LIVE VENTURES INCORPORATED, a          | Case No.:
     Nevada corporation,                    | Dept. No.:
12
                          Plaintiff,          **INITIAL APPEARANCE FEE**
13   vs.                                            **DISCLOSURE**
14   GEMSPRING CAPITAL MANAGEMENT,
     LLC, a Delaware limited liability company;   <u>Exempt from Arbitration:</u>
15   DOES I through X; and ROE ENTITIES I     Amount In Controversy Exceeds $50,000
     through X, inclusive,
16                                            Business Court Requested
                          Defendants.         Pursuant to EDCR 1.61(a)(2)
17

18

19

20          Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for

21   parties appearing in the above-entitled action as indicated below:

22          / / /

23

24

25

26

27

28

*Greenberg Traurig, LLP*
*10845 Griffith Peak Drive, Suite 600*
*Las Vegas, NV 89135*
*(702) 792-3773*
*(702) 792-9002 (fax)*

*ACTIVE 61660816v1*

1 | Plaintiff LIVE VENTURES INCORPORATED            $1,530.00

2 | **TOTAL REMITTED**                              **$1.530.00**

3 | DATED this 6th day of December  2021.

4 |                         GREENBERG TRAURIG, LLP

5 |                    By:/s/ Christopher R. Miltenberger
                           MARK E. FERRARIO, ESQ.
6 |                         Nevada Bar No. 1625
                           CHRISTOPHER R. MILTENBERGER, ESQ.
7 |                         Nevada Bar No. 10153
                           GREENBERG TRAURIG, LLP
8 |                         10845 Griffith Peak Drive, Suite 600
                           Las Vegas, NV  89135
9 |
10 |                        *Counsel for Plaintiff Live Ventures Incorporated*

Greenberg Traurig, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
(702) 792-3773
(702) 792-9002 (fax)

*ACTIVE 61660816v1*